STEPHEN FOGG *vs.* THOMAS LITTLEFIELD.

Androscoggin.   Decided December 29, 1877.

*Attachment.   Trial.   Waiver.   Expression of opinion.*

In an action against a sheriff for seizure of oxen, where the defense was a waiver by the plaintiff of the statute right of exemption, the presiding justice, after saying to the jury that the debtor might waive the privilege and the waiver be proved by any evidence that should satisfy them that such was his intention, that the waiver might be by words or acts or both, instructed them further: "Or he may so conduct himself that by his manner he may give the officer to understand he does not claim any privilege of exemption, but rather assents that the property may be attached." *Held,* that the instructions taken with the context cannot be construed as permitting the jury to find any other than a voluntary and intentional waiver by the debtor of his exemption privilege.

In the same action the instruction followed: "If the plaintiff gave his consent and said to the officer, ' there, all that property in that yard, comprising these oxen and those cows are mine, and you can take the oxen or any of the rest of them you see fit,' that would be a waiver, the action cannot be maintained," followed by a statement of the plaintiff's denial of this and of his version of the matter and " If this was all he said the jury would probably come to the conclusion there was no consent." *Held,* that this

instruction was not a decision by the judge of any question of fact within the province of the jury.

ON EXCEPTIONS.

TRESPASS, against a sheriff for taking and carrying away one pair of working oxen, valued at $300.

Plea, general issue with a brief statement that he took the oxen as sheriff, by William Keen, his deputy, by virtue of a writ, and that the oxen were disposed of according to law, to satisfy the judgment afterwards rendered in the action in which they were attached.

At the trial, the plaintiff claimed that the cattle were exempt from attachment by the provisions of R. S., c. 81, § 59. Evidence was introduced by the defendant tending to prove, and by the plaintiff tending to disprove, that at the time of the attachment, the plaintiff, by words and acts, waived his privilege of exemption of the cattle, and consented that the defendant might attach them on the writ then in his hands.

Upon this point of the alleged waiver of exemption and consent to the attachment, the presiding judge instructed the jury as follows :

" He (the deputy-sheriff Keen) went to the farm of this plaintiff to serve the writ. The question is, what was done there, what took place. If he went without saying anything to the plaintiff, and took that pair of cattle and went off with them as being attached on the writ, if Mr. Fogg did not own any horse, or mule or other oxen, then that pair of oxen would be exempt by law, and the officer, Mr. Keen, would be liable; because the mere standing still, the mere silence of the debtor on seeing an officer go and attach a pair of cattle and drive them off would not be giving his consent. But I will say to you this, that the exemption of a pair of cattle is a personal privilege to the owner, and that owner has a right to waive it if he sees fit. If a man has an only cow, a poor man, all the property he has in the world, and he has a family depending on it, he may go and mortgage the cow. A sale under an attachment is nothing more than a statute sale, whereas a voluntary sale by the debtor is simply

another mode of transfer. While the debtor may sell his cow, he may also voluntarily waive his privilege of exempting his cow, and give an express consent that the officer may attach the cow and sell it for his debt. How may that waiver be brought about? How shall it be proved? Why, by any evidence that shall satisfy the jury that that was the intention of the parties at the time.

"A man may waive the exemption privilege by words; he may do it by acts; he may do it by words and acts both; or he may so conduct himself at the time that by his manner he may give the attaching officer to understand that he does not claim any privilege of exemption, but rather assents that the property may be attached.

"If he (the plaintiff) gave his consent, and said to Mr. Keen, 'There, all that property in that yard, comprising these oxen and those cows, are mine, and you can take the oxen or any of the rest of them you see fit,' there is his consent,—that would be a waiver. If that is true you need not go any further,—the action cannot be maintained. But, the defendant says that is not true; he says he told him 'you perform your duty according to law and I will attend to my business.' If that is all he said, you would come to the conclusion, probably, that there was not any consent; that that was as much as to say, 'Hands off; you act at your peril; I stand on my legal rights.' There you could not find much express consent; could you see any assent?"

Other appropriate instructions were given, but those stated are all that were material upon the subject matter of waiver and consent. No instructions upon the point of waiver and consent were requested by the plaintiff.

The verdict was for the defendant; and the plaintiff alleged exceptions.

*R. Dresser*, for the plaintiff, admitted the correctness of the instructions in the first paragraph reported of the charge and of the instruction that one may waive the exemption privilege, by words or acts or both, but contended that it was error to instruct the jury that a man may waive the privilege by so conducting himself at the time "that by his manner he may give the officer to understand that he does not claim any privilege of exemption, but rather assents

that the property may be attached;" that it implied that the debtor's right to exemption depended to some extent upon whether he claimed the exemption, and that the debtor might waive his privilege without intending it. *Wentworth* v. *Young,* 17 Maine, 70.

To the last paragraph reported of the charge the counsel objected that it was a partial statement of the evidence and amounted to an expression of an opinion that if the plaintiff used that language that would be a waiver ; that it took from the jury the question of the effect of the evidence.

*I. W. Hanson & J. M. Libby,* for the defendant, said in substance that the language criticised did not purport to be the exact words of the witness, but were the words of the judge by way of illustration, similar in fact to the words actually used by the plaintiff, and coupled with the express condition " if the plaintiff gave his consent," overlooked in the argument of the plaintiff's counsel; and that the charge as a whole left the question of fact fairly to the jury.

BARROWS, J. The plaintiff's counsel admits that " a debtor may waive his privilege and allow his exempted property to be attached, and that he may signify such waiver by acts as well as words." But he complains because the judge instructed the jury that " he (the debtor) may so conduct himself at the time that by his manner he may give the attaching officer to understand that he does not claim any privilege of exemption, but rather assents that the property may be attached." " If he (the plaintiff) gave his consent and said to Mr. Keen, (the officer) ' There, all that property in that yard, comprising these oxen and those cows, are mine, and you can take the oxen or any of the rest of them you see fit,' there is his consent,—that would be a waiver. If that is true you need not go any further, the action cannot be maintained."

This, it is ingeniously argued, may have misled the jury to believe that the fact of waiver did not depend upon the debtor's intention, but might exist when the officer misconstrued the debtor's words and acts, and that the latter clause is objectionable

as a decision by the judge of what words and acts would amount to a waiver, when he should have left it to the jury to say whether there was one.

Had this been all that was said to the jury in this connection, it is possible the jury might have so understood it. But the context also should be examined to see what idea was in fact conveyed to them.

Now the jury had just been distinctly and carefully instructed that "the mere standing still, the mere silence of the debtor on seeing an officer go and attach a pair of cattle and drive them off, would not be giving his consent." Then, after telling the jury that "the exemption of a pair of cattle is a personal privilege to the owner, and that owner has a right to waive it if he sees fit," and likening it to a poor man's right to sell or mortgage his only cow, and instructing them that as he may sell his cow, "he may also voluntarily waive his privilege of exempting his cow, and give an express consent that the officer may attach it and sell it for his debt," he answers the question how shall such waiver be proved, by saying that it may be proved "by any evidence that shall satisfy the jury that that was the intention of the parties at the time." "A man may waive the exemption privilege by words; he may do it by acts; he may do it by words and acts both;" and then comes the language before recited, upon which plaintiff bases his exceptions.

Now, from these instructions we do not believe that a jury of average intelligence would be liable to get the impression that anything short of a voluntary intentional communication by the debtor to the officer of his willingness to waive the exemption, and consent to an attachment would amount to a waiver, or that any misconception by the officer of his meaning and intention would have that effect ; or that anything would be a waiver which did not satisfy the jury that such was the intention of the party at the time.

Jurors may fairly be supposed to accept the obvious import of the instructions upon any given point, but not, as is often the case with excepting counsel, to use a critical nicety of interpretation, to extract a meaning inconsistent with propositions that have

been distinctly stated. A broad distinction had been laid down in the outset between a waiver and a mere non-claim of the exemption, and the elements of voluntariness and intention on the part of the debtor were made too prominent to be overlooked when the jury were considering whether he gave the officer to understand that he did not claim any privilege of exemption but rather assented to the attachment.

The plaintiff's position, that the instructions given by the judge amounted to a decision of the question what language would constitute a waiver, and that he thereby took from the jury their right to decide whether there was or was not a waiver here, is based upon the idea that "what a debtor says in such cases does not necessarily or conclusively indicate what he intends to express or really does express,"—that "the significance of words spoken under excitement is often modified by the tone and manner of the speaker and by his actions in connection with his words." We will not stop to determine whether one who uses language directly fitted to convey, and which does, in fact, convey to the mind of an officer the idea that he assents to the attachment of exempted property, would not be bound by the same kind of an equitable estoppel which forbids a man to assert a title to property which he has seen sold by a third party to an innocent purchaser without making known his claim.

We will regard the instructions as applied to the question of waiver only. The attention of the jury had already been called to the acts and manner of the debtor and to their possible effect in giving the officer to understand that he assented to the attachment, and all these things were to be looked at in determining whether the evidence was such as satisfied the jury that he so intended. To reach his conclusion that the judge decided a question as to the import and intent of the language, which should have been left to the jury, the counsel must ignore the first member of the sentence of which he complains. "If he gave his consent, and said," etc., runs the instruction, thus leaving it to the jury to find under previous directions whether he gave his consent; and it is plain from what immediately follows that all that was designed was to call the attention of the jury to

the conflicting accounts given by the plaintiff and officer as to what occurred at the interview. See *Pope* v. *Machias W. P. Co.*, 52 Maine, 535, 539, for instructions upon the subject of waiver, which, though differently framed, are substantially of similar import with those here given.

The sentences complained of, when carefully examined in connection with the context, do not admit of the construction which plaintiff's counsel seeks to put upon them.

*Exceptions overruled.*

APPLETON, C. J., WALTON, VIRGIN, PETERS and LIBBEY, JJ., concurred.